# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | **Bankruptcy Case** |
| **PATRICIA DARLENE WIERSMA,** | **No. 12-41463-JDP** |
| **Debtor.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Aaron Tolson, Ammon, Idaho, Attorney for Debtor.

    Harry Clifford DeHaan, Twin Falls, Idaho, pro se.

### *Introduction*

In the motion before the Court, chapter 7[1] debtor Patricia Darlene

Wiersma ("Debtor") asks the Court to enforce the discharge entered in this

case to prevent the enforcement of claims asserted against her by creditor

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

Harry DeHaan ("DeHaan"). Dkt. No. 38. DeHaan objected to the motion, Dkt. No. 41, and a hearing was held, after which the Court took the motion under advisement. Dkt. No. 43. The Court has considered the parties' briefs and arguments and the applicable law. This Memorandum disposes of the motion.[2]

*Facts*

On July 2, 2012, Joe Rockstahl ("Rockstahl"), an attorney who is now Debtor's husband[3], was arrested for exhibition of a firearm; he was later convicted.[4] Dkt. No. 41. In connection with that criminal case, an individual named Steven Nielsen ("Nielsen") provided information and testimony to the police and the state court which Debtor and Rockstahl claimed he fabricated.

---

[2] The Court's findings of fact and conclusions of law are set forth herein. *See* Rules 7052, 9014.

[3] Debtor and Rockstahl were married in 2009; previously, she had been married to Jim L. Wiersma, but they divorced in 2007. Stmt. of Fin. Affairs, Dkt. No. 12, ¶ 16.

[4] That conviction has been appealed.

MEMORANDUM OF DECISION – 2

On October 19, 2012, Debtor filed her bankruptcy petition. Dkt. No. 1. While Debtor insists she was, at the time, unaware of the facts potentially giving rise to a defamation claim against Nielsen, at some time during the pendency of the bankruptcy case she learned of them. However, she did not amend her schedules to disclose the existence of such cause of action. Dkt. No. 12. When the chapter 7 trustee serving in Debtor's case, Gary L. Rainsdon (Trustee"), was informed about the possible damage claim against Nielsen, after considering the facts and consulting with his counsel, he elected not to pursue it. A discharge was entered in the bankruptcy case on January 23, 2013. Dkt. No. 23. Trustee filed a report of no distribution, and on August 21, 2013, an order was entered closing the bankruptcy case. Dkt. No. 26.

Undeterred by Trustee's reluctance to prosecute the claim, and unaware of the repercussions of non-disclosure under Idaho case law, on October 4, 2013, nearly one year post-bankruptcy, Debtor and Rockstahl sued Nielsen for defamation, intentional infliction of emotional distress,

MEMORANDUM OF DECISION – 3

and abuse of process.[5] Dkt. No. 41, Exh. A. DeHaan, an attorney acting as Nielsen's counsel, asked the state court to dismiss the action because it had not been disclosed in Debtor's bankruptcy schedules. The state court agreed with DeHaan, and based on *McCallister v. Dixon*, 303 P.3d 578 (Idaho 2012), dismissed the action. Ultimately, on September 5, 2014, a judgment in favor of Nielsen for attorneys fees and costs in the amount of $10,095 was entered against Debtor and Rockstahl based upon Rule 11 of the Idaho Rules of Civil Procedure. Dkt. No. 41, Exh. B.

On February 24, 2015, Nielsen assigned his interest in the Rule 11 judgment to DeHaan as payment of his attorneys fees for defending the defamation action.[6] At some point, presumably after DeHaan had

---

[5] *Rockstahl v. Nielsen*, Case No. CV-13-4135, Fifth Judicial District, State of Idaho.

[6] Interestingly, DeHaan transferred his status with the Idaho State Bar to "inactive" that same day, February 24, 2015. *Aff. of Joe Rockstahl*, Dkt. No. 44 ¶ 6. However, while he filed his objection to Debtor's motion in this bankruptcy case *pro se* on behalf of "Harry DeHaan, creditor," DeHaan stated at the motion hearing that he was representing Nielsen as well as himself. Rockstahl requests that the Court sanction DeHaan for representing a client while holding an inactive license. Dkt. No. 44. The Court declines this invitation. Because Nielsen assigned away his interest in the judgment, any attempt by Debtor to enforce the discharge against Nielsen would be futile, as he no longer has any right to the

MEMORANDUM OF DECISION – 4

undertaken collection efforts against them, Debtor and her spouse paid the Rule 11 judgment in full.  However, DeHaan has now petitioned the state court for an award of additional attorneys fees incurred during his collection activities.

Apparently frustrated with DeHaan's actions, on March 3, 2015, Debtor filed a motion to reopen the bankruptcy case, which the Court granted.  Dkt. Nos. 28-31.  Debtor then amended her schedule F to add DeHaan as a creditor holding an unsecured nonpriority claim, and amended the Statement of Financial Affairs to disclose the civil suit that culminated in a judgment.  Dkt. Nos. 32, 36.  On April 1, 2015, Debtor also filed the instant motion to enforce the discharge against DeHaan to prevent him from collecting any additional attorneys fees from her.

*Analysis and Disposition*

In considering Debtor's motion, it is important to first identify which of DeHaan's claims for recovery of attorneys fees are, and are not, at

---

judgment.  As a result, not only as a practical matter, but legally, DeHaan's only "client" is himself.

MEMORANDUM OF DECISION – 5

issue. As noted above, the judgment entered in favor of Nielsen against Debtor awarding attorneys fees as a sanction under Idaho's Rule 11 was paid. Debtor does not argue here that this fee award was discharged, nor that DeHaan violated the discharge injunction in securing its payment.

DeHaan's claim targeted by Debtor is, instead, his campaign to recover the additional fees he allegedly incurred in collecting the Rule 11 judgment. The motion seeking that award has been argued to the state court, but, as far as this Court can tell, the state court has not yet rendered any decision or judgment concerning DeHaan's request. It is DeHaan's continuing attempts to secure this supplemental fee award that Debtor urges violates the terms of her bankruptcy discharge.

Debtor's argument that DeHaan is in contempt of the discharge order is founded upon her perception of "fairness" in the application of the Idaho Supreme Court's decision in *McCallister*. In that case, the debtor alleged he had been injured due to a doctor's malpractice. After the injury occurred, the debtor filed a chapter 13 petition to save his vehicle from repossession. However, the debtor did not disclose his potential

MEMORANDUM OF DECISION – 6

malpractice claim as required in his bankruptcy schedules, nor did he later amend them even after filing a state court malpractice action against the doctor and a medical center.  Indeed, the necessary modifications to the schedules were made only after the defendants in the malpractice suit pointed out the nondisclosure to the state court.  When the defendants' brought the debtor's omissions to the state court's attention, the court dismissed the debtor's action via application of the equitable doctrine of judicial estoppel.

On appeal, the Idaho Supreme Court,  noting that judicial estoppel, "precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first," affirmed the trial court's dismissal order.  *Id*. at 582.  The court observed that the purpose of the judicial estoppel doctrine is to protect the integrity of the judicial system by preventing litigants from playing "fast and loose" in litigation.  *Id*.  In *McCallister*, the court held that the debtor's tardy amendment of his bankruptcy schedules to include the malpractice claim did not cure the effects of his initial non-disclosure so as to avoid the

MEMORANDUM OF DECISION – 7

application of judicial estoppel.  *Id.* at 585, 587.

In this case, DeHaan informed the state court about the Debtor's bankruptcy case, and pointed out that Debtor's defamation cause of action had not been disclosed on her schedules.  Based on *McCallister*, the district court dismissed Debtor's case against Nielsen.  According to Debtor, because DeHaan successfully invoked *McCallister* to prevent her from pursuing the defamation action, a fair application of *McCallister* should likewise prohibit DeHaan from incurring further legal fees in the state court action post-dismissal.  In other words, Debtor argues that, in equity, once the *McCallister* decision was applied to stop Debtor from proceeding against DeHaan's client, it should also prevent DeHaan from pursuing her for any further recoveries in the same state court action.

While Debtor urges her position promotes fairness, under the circumstances presented here, her argument misses the mark for a couple of reasons.  First, recall, *McCallister* focused upon the proper application of judicial estoppel under Idaho law in a civil action where the foundational cause of action had not been disclosed in a claimant's bankruptcy case,

MEMORANDUM OF DECISION – 8

though the facts giving rise to that claim were known, or came to be known, to the debtor while the bankruptcy case was pending. The state court simply read and applied *McCallister* in Debtor's action against Nielsen. However, *McCallister* cannot be read to help Debtor in this context.

Judicial estoppel is all about preventing a party from taking inconsistent positions in different legal actions:

> [It]takes into account . . . what the [estopped] party knew, or should have known, at the time the original position was adopted. Thus, the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is "playing fast and loose" with the court. *Heinze v. Bauer*, 178 P.3d 597, 601 (2008)). Judicial estoppel, however, should "only be applied when the party maintaining the inconsistent position either did have, or was chargeable with, full knowledge of the attendant facts prior to adopting the initial position." *McKay v. Owens*, 937 P.2d 1222, 1229 (1997).

*McCallister*, 303 P.3d at 582.

In this bankruptcy case, at the time Debtor filed her bankruptcy petition and did not disclose the potential defamation case, DeHaan and his client had no knowledge that she would, post-discharge, "return to the

MEMORANDUM OF DECISION – 9

fray" in state court, thereby requiring Nielsen and DeHaan to incur additional attorneys fees. Moreover, DeHaan has not taken inconsistent positions in any of the proceedings. While Debtor would read *McCallister* to prevent any of the parties to a state court action from proceeding once judicial estoppel is imposed against one of those parties, Debtor lacks any basis to argue that DeHaan should be estopped.

Moreover, in this context, the relevant authority is the Bankruptcy Code, not the state law of equity. In particular, this Court's decision in *Bishop v. Conley (In re Conley)*, 00.1 IBCR 15 (Bankr. D. Idaho 2000) is instructive. There, lengthy litigation had occurred between neighbors concerning a real property easement. After the state court ruled, finding one of the neighbors in contempt and awarding attorneys fees to the other, the offending party filed a chapter 7 bankruptcy petition. Post-discharge, the litigation over the easement continued, the debtor eventually lost the war, and the state court awarded a money judgment against him in favor of his neighbor. Following entry of this judgment, the debtor filed a chapter 13 petition. While there were a number of concerns with

confirmation of debtor's proposed plan, relevant here was the question of whether the money judgment against debtor was valid, or had been discharged in connection with the prior chapter 7 bankruptcy filing.

In determining the scope of the discharge, the Court reviewed the broad definition of "claim" under § 101(5), and considered § 524(a), which provides that a discharge in bankruptcy, "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . whether or not discharge of such debt is waived[.]" The Court explained that a chapter 7 discharge "would capture and discharge all claims of the [c]reditors arising prior to the [petition date], whether or not at that point liquidated, contingent or disputed.  That discharge would void any judgment, even if later obtained, to the extent it establishes a personal liability of [d]ebtor with respect to discharged claims." *Id*. at 17.  The Court ultimately divided the fees and costs the state court awarded into those incurred before, and those after, the date the chapter 7 petition was filed, and held that those incurred prior to the

MEMORANDUM OF DECISION – 11

filing were discharged, while those incurred after that date were not. *Id*. at 19.

The Court concludes there was no discharge violation in this case. Here, the trustee considered the merits of Debtor's potential claim against Nielsen and declined to pursue it. Debtor then made the decision to "return to the fray" to prosecute the defamation action herself. *See Siegel v. Fed. Home Loan Mort. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998). In doing so, she assumed the risks inherent in that decision, including the possibility that she would be required to pay attorneys fees to her opponent. As the Ninth Circuit noted in *Siegel*, a similar situation,

> In fine, [the debtor's] decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences. Thus, we affirm the district court's award of attorney's fees in favor of Freddie Mac.

*Id*. at 533-34.

In *Bishop*, this Court acknowledged that the debtor had given new

MEMORANDUM OF DECISION – 12

life, post-bankruptcy, to the state court litigation, and were it not for this act, the damages and fees would not have been incurred. *Bishop*, 00.1 IBCR at 19. In doing so, and consistent with *Siegel*, this Court concluded that, "Debtor assumed the risk that continued litigation would be resolved adversely to him, and his opponents awarded fees and costs." *Id*. Debtor's position urging the Court to expand the scope of the discharge to prohibit DeHaan's continuing actions in state court misconstrues the Code. Section 727(b) provides that a debtor will be protected against efforts to collect "all debts that arose before the date of the order for relief under [chapter 7]." Here, nearly a year post-petition, and over nine months post-discharge, Debtor elected to "return to the fray" with DeHaan. Any liabilities Debtor might suffer as a result of that post-bankruptcy decision are not discharged. In other words, the discharge injunction does not prevent DeHaan from seeking, nor the state court from awarding, attorneys fees incurred by DeHaan after the bankruptcy was filed to collect the Rule 11 judgment.

///

MEMORANDUM OF DECISION – 13

*Conclusion*

The Court declines to adopt Debtor's argument that "fairness" prohibits DeHaan from pursuing her for attorneys fees. Because the discharge injunction does not prohibit DeHaan from seeking payment from Debtor for attorneys fees in the state court litigation incurred after the filing of the bankruptcy petition, Debtor's Motion to Apply Discharge to the prospective attorney fee award is denied.

A separate order will be entered.

Dated: October 6, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge